UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| GREGORY LYNN MCKNIGHT, JR., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Nos. 3:21-CV-197 |
| | )      3:18-CR-021 |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

Before the Court is Gregory Lynn McKnight, Jr.'s ("Petitioner's") *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 73].[1] The United States has responded in opposition. [Doc. 4]. Petitioner did not file a reply, and the time for doing so has passed. *See* Rule 5(d) of the Rules Governing Section 2255 Proceedings for the United States District Courts; *see also* [Doc. 3]. Petitioner has also filed an amended § 2255 motion [Doc. 5] which the Court construes as a motion to amend since the United States had already filed a response. For the reasons below, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 73] will be **DENIED**, and his motion to amend [Doc. 5] will be **GRANTED**.

I. BACKGROUND

---

[1] Document numbers not otherwise specified refer to the civil docket.

In March 2018, Petitioner was charged in a four-count indictment pertaining to attempting to persuade, induce, entice, and coerce a minor into engaging in sexual activity, to transfer obscene materials to a minor, to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct. Petitioner was also charged with travelling for the purpose of engaging in illicit sexual conduct. [Crim. Doc. 1].

On April 25, 2019, Petitioner entered into a plea agreement with the Government. [Crim. Doc. 26]. Petitioner agreed to plead guilty to one count of knowingly attempting to employ, use, persuade, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct which would be transported in an effecting interstate and foreign commerce by any means in violation of 18 U.S.C. § 2251; and one count of travelling in interstate commerce for the purposes of engaging in illicit sexual conduct in violation of 18 U.S.C. § 2423(b). [*See id*.] The plea agreement was signed by Petitioner and attorney Bobby Hutson.

In his Plea Agreement, Petitioner acknowledged that between on or about January 14, 2018, and January 22, 2018, he attempted to persuade the minor victim to take pornographic depictions of herself and send them to Petitioner via Facebook Messenger. Specifically, Petitioner asked the minor victim to send a video using a vibrator. Petitioner knew the victim was a minor, 13 years old, at the time he sent the messages and that the messages would have been transported in interstate commerce from Virginia to Tennessee. Further, Petitioner traveled from Virginia to Tennessee for the purpose of having sex with the minor victim. When he arrived at the pre-arranged meeting place, law enforcement

arrested him. [*Id*. at 3]. Petitioner also agreed to a Rule 11(c)(1)(C) sentence of 180 months' imprisonment followed by 15 years supervised release.

The Court conducted a change of plea hearing on May 8, 2019. Although there is no transcript of that hearing in the record, the Court recalls conducted its standard colloquy specifically advising Petitioner of his rights, grating his motion to change his plea to guilty, confirming that Petitioner was pleading guilty to Counts 3 and 4 of the Indictment, confirming that the Government moved to dismiss the remaining counts at sentencing, and referring Petitioner for a Presentence Investigative Report ("PSR").[2]

The PSR calculated a total offense level of 33 and a criminal history category of I, resulting in a guideline range of 135 to 168 months. [Crim. Doc. 33, ¶ 70]. However, because the statutorily authorized minimum sentences were greater than the maximum of the applicable guidelines range, the guideline term of imprisonment was 180 months. [*Id*.]. The PSR also noted that for supervised release the range was 5 years to up to life and further noted that "[i]f the instant offense of conviction [was] a sex offense, the statutory maximum term of supervised release is recommended [under] U.S.S.G. § 5D1.2(b).

The United States filed a notice of no objections to the PSR. [Crim. Doc. 35]. The United States also filed sentencing memorandum wherein it requested the Court accept the agreed sentence of 180 months followed by 15 years supervised release. [Crim Doc. 39]. Petitioner, through counsel, also filed a notice of no objections to the PSR. [Crim. Doc.

---

[2] Where, as here, the same judge considering the § 2255 motion also presided over the underlying proceedings, the judge may rely on his recollections of those proceedings. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013).

3

37]. Petitioner, through counsel, also filed a sentencing memorandum, requesting the Court to accept the agreed sentence of 180 months followed by 15 years supervised release. [Crim. Doc. 38]. Prior to sentencing, Petitioner also filed a motion for a competency evaluation [Crim. Doc. 52], but he orally moved to withdraw the motion at the competency hearing. [*See* Crim. Doc. 62]. Petitioner filed a supplement to his sentencing memorandum and attached the mental evaluation report. [Crim. Doc. 66].

On September 29, 2020, the Court accepted the Plea Agreement with the Rule 11(c)(1)(C) sentence and sentenced Petitioner to a total of 180 months' imprisonment and then fifteen years of supervised release. [Crim. Doc. 69]. Petitioner did not file a direct appeal, but on May 27, 2021, he filed this timely § 2255 motion.

## II. STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

4

Case 3:18-cr-00021-RLJ-HBG   Document 75   Filed 10/03/22   Page 4 of 14   PageID #: 356

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that applies in habeas cases alleging constitutional error). To obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's

allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

III. ANALYSIS

As an initial matter, Petitioner seems to raise four claims of ineffective assistance of counsel in this § 2255 motion.[3] He asserts that his counsel was ineffective for: 1) misadvising that the supervised release mandatory minimum was 15 years instead of 5 years, 2) misadvising that Petitioner would qualify for the First Step Act, 3) not going over the PSR with Petitioner, and 4) for failing to challenge the sufficiency of the evidence for Counts 3 and 4. [Doc. 1; Crim. Doc. 73]. Petitioner also filed an amended § 2255 [Doc. 5] which the Court construes as a motion to amend. The Court will first address Petitioner's non-dispositive motion before addressing his ineffective assistance claims.

A. Motion to Amend [Doc. 5]

Petitioner filed an amended § 2255 motion [Doc. 5], which the Court construes as a motion to amend. Leave to amend shall be given freely when justice so requires. Courts have interpreted Rule 15(a) as setting forth a "liberal policy of permitting amendments to ensure the determination of claims on their merits." *Marks v. Shell Oil Co.,* 830 F.2d 68, 69 (6th Cir. 1987); *see also Anderson v. United States*, 39 F. App'x 132, 136 (6th Cir. 2002).

---

[3] Petitioner does not specify which attorney he is complaining of in his motion. As Petitioner has had three different Federal Defender appointed attorneys and one CJA appointed attorney, the Court will liberally construe his claims to refer to the attorney appointed to him at the phase of the trial which corresponds to his claims.

6

Here, while Petitioner filed his motion to amend after the United States responded, he does not assert new claims. Rather, Petitioner provides more factual support for his existing claims. Accordingly, the Court will **GRANT** Petitioner's motion to amend [Doc. 5].

### B. Ineffective Assistance of Counsel Claims

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A movant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### a. Claim 1

Petitioner first faults counsel for misinforming him about how long he would be on supervised release. Petitioner claims his counsel told him the mandatory minimum was 15 years for supervised release, when it was really 5 years. [Doc. 5]. Petitioner alleges that is he had known the range was 5 years to Life on supervised release, he would have fought for 5 to 10 years on supervised release and not agreed to 15 years. He asserts his attorney told him he would have to accept 15 years supervised release or go to trial where he was likely to lose and receive a longer time on supervised release in order to scare him into signing the Plea Agreement. [*Id*.]. The United States responds that the written Plea Agreement states that each conviction required a term of "supervised release for not less than five years up to life" [Crim. Doc. 26], that Petitioner was informed of this both by the Plea Agreement and by the Court at the change of plea hearing, and that Petitioner agreed to 15 years supervised release as part of a Rule 11(c)(1)(C) agreement. [Doc. 4].

Petitioner's claim that he was misinformed by counsel regarding the mandatory minimum for supervised release is contradicted by the record and not credited. Petitioner

8

Case 3:18-cr-00021-RLJ-HBG   Document 75   Filed 10/03/22   Page 8 of 14   PageID #: 360

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### a. Claim 1

Petitioner first faults counsel for misinforming him about how long he would be on supervised release. Petitioner claims his counsel told him the mandatory minimum was 15 years for supervised release, when it was really 5 years. [Doc. 5]. Petitioner alleges that is he had known the range was 5 years to Life on supervised release, he would have fought for 5 to 10 years on supervised release and not agreed to 15 years. He asserts his attorney told him he would have to accept 15 years supervised release or go to trial where he was likely to lose and receive a longer time on supervised release in order to scare him into signing the Plea Agreement. [*Id*.]. The United States responds that the written Plea Agreement states that each conviction required a term of "supervised release for not less than five years up to life" [Crim. Doc. 26], that Petitioner was informed of this both by the Plea Agreement and by the Court at the change of plea hearing, and that Petitioner agreed to 15 years supervised release as part of a Rule 11(c)(1)(C) agreement. [Doc. 4].

Petitioner's claim that he was misinformed by counsel regarding the mandatory minimum for supervised release is contradicted by the record and not credited. Petitioner

signed that he read and understood the Plea Agreement and its terms. The Plea Agreement clearly stated that the mandatory minimum for supervised release was 5 years up to life. Further, the Court during its plea colloquy informed Petitioner of the sentences he was facing for each count, including any term of supervised release, and ensured Petitioner understood and was competent to understand before allowing Petitioner to change his plea to guilty.

Thus, Petitioner has not met his burden to prove he was prejudiced by any ineffective assistance. Petitioner has not stated that he would have gone to trial but for counsel's mis-advice, nor has he shown that he would have prevailed on an objection to the 15 years supervised release to merit a lower term. *Strickland*, 466 U.S. at 694. While Petitioner says that his attorney tried to scare him into pleading guilty, Petitioner's statements at the change of plea hearing that he was not coerced into signing the Plea Agreement and that he understood the terms of the Plea Agreement suggest otherwise. As the Supreme Court has explained, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Petitioner's unsupported allegations are directly contradicted by the record and are not credited.

Accordingly, Petitioner is not entitled to relief as to Claim 1.

  b. ***Claim 2***

Petitioner next faults his counsel for misleading him into believing he would be eligible for the First Step Act benefits and programs. [Doc. 5]. Petitioner states that his

counsel told him he would be "eligible to earn the extra good days that the programs allow," but he was told otherwise when he arrived at the prison facility. Petitioner asserts that if he had known he would not be eligible, he could have fought to have the 18 U.S.C. § 2251 charge removed and instead pleaded to a charge that would have qualified him for extra good time. [*Id*.]. The United States responds that Petitioner's counsel's advice that Petitioner would be eligible for programming under the First Step Act was accurate since the First Step Act directs the Bureau of Prisons to "ensure that . . . all prisoners are able to successfully participate in [recidivism reduction] programs. [Doc. 4] (internal citations omitted). The United States further argues that Petitioner cannot establish prejudice since he has not shown that any statements regarding the First Step Act affected his decision to plead guilty or go to trial and that Petitioner's eligibility for the programming incentives would be identical whether he pleaded guilty or was convicted at trial. [*Id*.].

Petitioner's Claim 2 fails at *Strickland's* second step. Petitioner does not say which charge would have qualified him for the benefits, nor does he suggest that he would have gone to trial had he known that he would not be eligible for extra good time. *Strickland*, 466 U.S. at 694. While Petitioner is ineligible for credits from the recidivism reduction programs based on his conviction under 18 U.S.C. § 2251, he is not categorically excluded from all programs created under the First Step Act. Thus, counsel was not ineffective for advising Petitioner that he would be eligible to participate in First Step Act programs.

Accordingly, Petitioner is not entitled to relief as to Claim 2.

c. *Claim 3*

10

Petitioner next faults counsel for not giving him a copy of the PSR or properly reviewing it with him, resulting in the PSR containing incorrect factual information about an incident described with the minor victim. [Doc. 5]. The United States responds that Petitioner's Claim 3 is conclusory and contradicted by his statements in Court at sentencing that he reviewed the PSR with his counsel. [Doc. 4].

As the Court has previously stated, there is a strong presumption of verity for statements made in open court. *Blackledge*, 431 U.S. at 74. At sentencing, the Court inquired whether Petitioner had gone over the PSR with his attorney, and Petitioner affirmed that he did. Further, even if Petitioner can show that his attorney did not go over the PSR with him, the errors he has pointed out to the Court are alleged errors regarding the facts of the case which had no effect on Petitioner's sentence due to the Court's acceptance of the Rule 11(c)(1)(C) agreed sentence. [Crim. Doc. 69]; *See also* Fed. R. Crim. P. 32(i)(3)(B). Thus, Petitioner cannot show prejudice by inclusion of the allegedly inaccurate facts included in the PSR.

Petitioner also faults his counsel for being late to the sentencing hearing and not giving him a copy of the PSR. These are conclusory statements without further factual support. As a result, the Court can reject these contentions as insufficient to sustain the motion. *See Ushery v. United States*, No. 20-5292, 2020 U.S. App. Lexis 21840, at *3-4 (6th Cir. July 14, 2020). Petitioner has failed to meet his burden to show that counsel's behavior fell below "reasonableness under prevailing professional norms." *Strickland*, at 688.

Accordingly, as Petitioner has failed to meet his burden under each prong of *Strickland*, he is not entitled to relief as to Claim 3.

### d. Claim 4

Finally, Petitioner faults counsel for failing to argue that there was insufficient evidence to sustain his convictions for Counts 3 and 4. [Doc. 5]. Specifically, Petitioner argues that he was traveling to that area for his bowling league, not just to meet the victim, and that he didn't ask the minor to produce anything as the pictures and video requested could have already existed. [*Id.*]. The United States responds that Petitioner's counsel was not ineffective for failing to object to the sufficiency of the evidence as Petitioner waived his right to challenge the sufficiency of the evidence for his conviction when he chose to plead guilty. [Doc. 4].

The Court first notes that Petitioner chose to plead guilty and did not file a motion to suppress evidence, nor did he proceed to trial. A defendant "has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes,* 463 U.S. 745, 751 (1983). Having waived his right to hold the Government to its burden of proof, Petitioner cannot complain the evidence against him would have been insufficient.

At the change of plea hearing, the United States set forth the factual allegations against Petitioner. Petitioner affirmed that the factual allegations were accurate under oath at his change of plea hearing. Petitioner also affirmed, under oath, at his change of plea hearing that he wanted to plead guilty, that he understood what he was pleading guilty to, and that he was offering to plead guilty because he was in fact guilty. While Petitioner now

12

alleges that his attorneys took advantage of him and forced him to file a Plea Agreement, his solemn declarations under oath are strongly presumed to be true. *Blackledge*, 431 U.S. at 74. Petitioner has not met his burden to overcome that presumption of verity. Further, Petitioner has not established prejudice as he has not alleged that he would have gone to trial but for counsel's mis-advice.

Accordingly, Petitioner is not entitled as to Claim 4.

## IV. CONCLUSION

For the reasons above, Petitioner's motion to amend [Doc. 5] will be **GRANTED**, and his § 2255 motion [Doc. 1; Crim. Doc. 73] will be **DENIED** and **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." *Id.* The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. Having examined Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the

13

dismissal of those claims was debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

A separate judgment will enter.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge